# KING v. SHACKLEFORD.

1. The bill alleged, that the complainant and defendant were appointed executors of the will of J. M., and were qualified, and received letters testamentary as such; that defendant became the surety of one F. in a promissory note, payable to the executors, given for property of the testator's estate, purchased by F.; that a judgment had been obtained thereon, and execution returned " *nulla bona* ;" F. was insolvent, and M's estate had been so reported and declared; that the defendant had removed to a distant county of the State, some ten or twelve years ago, had ceased to take an active part in the execution of the will, and that duty devolved upon the complainant: *Held*, that these facts

did not give a court of equity jurisdiction, and if proved, would not authorise a decree in favor of the complainant against the defendant, as the surety of F.

Writ of error to the Court of Chancery for the 30th district Northern division.

The case made by the bill is this: In 1826 or 7, Job Mason departed this life, having previously made his will, by which he appointed the complainant, King and the defendant Shackleford, his executors. The will was admitted to probate in the county court of Shelby county, and letters testamentary, granted to both the executors, who gave the bond and took the oaths required by law. A public sale was had by the executors of the personal effects of their testator, at which one Ferrell became the purchaser of a slave, for the sum of $815. Ferrell executed his note with the defendant, as his security, dated February 3, 1828, for that sum, payable to the complainant and defendant, as executors of Job Mason, on the 1st day of January, then next. On this note, a judgment was recovered against Ferrell by suit, in the name of both executors, and execution thereupon was returned *nulla bona.* Ferrell is charged to be insolvent On the 18th April, 1828, Mason's estate was declared insolvent, and yet remains so, to a large amount.

The defendant removed to Lawrence county some ten or twelve years ago, and had ceased for a long time to take any part in the execution of the said will, which it is charged, devolved upon the complainant. The defendant refused to pay, or in any manner to account to his co-executor for the amount for which he was thus bound as security for Ferrell.

The prayer is, that the defendant may be decreed to pay the amount of the note to complainant; or that he may be deemed to account for the same as executor, and pay the same to the creditors of the estate, according to the amount of their respective claims; or for such other relief as may be considered proper.

The bill was dismissed for want of equity, upon motion of the defendant; and this is now assigned as error.

Peck, for the plaintiff in error, insisted, that the bill should have been retained, in order that an account might be taken between the executors, even if payment to the complainant or creditors, ought not to be decreed.

HOPKINS, for the defendant, contended, that the bill did not disclose a case for equitable relief. That the defendant was not liable to his co-executor as such, but to the creditors and legatees of the testator's estate; and that a payment to the complainant would not discharge his liability. [14 Peters' Rep. 166.] The removal of defendant from Shelby to Lawrence county, was not a renunciation of his representative character, and did not confer upon his co-executor, rights to which he was not previously entitled [Id. 8 Cranch's Rep. 9.]

COLLIER, C. J.—The act of 1806, concerning wills and testaments, &c. gives to one joint administrator, an action of account against the other, who has taken all, or the greater part of the intestate's estate, and refuses to pay the debts, or funeral expenses, or refuses to account with him. It provides further, that "any executor being a residuary legatee, may have an action of account against his co-executor or co-executors, and recover his part of the estate in the hands of such co-executor or co-executors." [Clay's Dig. 226, § 29.] This statute is the only one which has the remotest application, and it is perfectly clear that the case stated in the bill, does not come within its letter or spirit.

The sole ground on which courts of equity proceed in the administration of assets, is said to be the execution of a trust, viz: that it is the duty of an executor or administrator who has the property in his hands to apply it in payment of debts and legacies; and dispose of the surplus, according to the will of the testator, or in case of intestacy, according to the statute of distribution. [1 Story's Eq 506, and cases there cited.] But the learned author denies that the fact of the administration being a constructive trust, is the sole ground of jurisdiction. He says, "other auxiliary grounds also exist; such as the necessity of taking accounts, and compelling a discovery; and the consideration that the remedy at law, when it exists, is not plain, adequate and complete. [Ibid. 507–8.] Although it is not explicitly alleged, yet the fair inference from the bill is, that the complainant supposes, that by the removal of the defendant to a remote county, and ceasing to be active in the administration of the estate, he is entitled in his fiduciary character, to all the assets which are unadministered. This assumption, as we shall presently show, is inde-

54

fensible. It is not intimated that the interference of chancery is necessary, either for the purpose of taking an account, or compelling a discovery. True, the remedy, according to the ordinary course of the common law, is not available; but in adjusting the shares, to which the creditors shall be entitled under the report of insolvency, or if there were no cred'tors, then in directing the payment of legacies, or in distr.but'ng the estate. it would be entirely competent for the orphans' court, to render a decree against the defendant, not only for the money in hand, but also for what he was indebted to it.

In Childress v. Childress, [3 Ala. Rep. 752,] we said, "if an executor purchases a part of his testator's estate, he is after the expiration of the term of credit, chargeable with the amount as cash, in the same manner as if he had collected money or converted property belonging to it. True, it is the duty of an executor to collect the debts due the estate he represents; but there is no process by which he can coerce a collection of himself, and as he is the party who is both to pay and receive the money, the law will regard him as in possession of it, from the time it became due." There, as in this case, there were several executors, and one of them charged himself w.th the amount of his note, given for town lots purchased at a sale made by them, of their testator's estate. The fact that the defendant in the present case, was the mere surety of the purchaser of property, cannot relieve it from the influence of the case cited. He is regarded by our law as equally and simultaneously liable with the principal debtor, and as one of the makers of a joint and several note, might be jointly or primarily sued, had he not been one of its payees.

In Edmunds, et al. v. Crenshaw, [14 Pet. Rep. 166,] it was decided, that where there are several executors, each has a right to receive the debts, and other assets of the estate; and that a payment of the sums received by him, to his co-executor, will not discharge him from liability to the estate. *Further*, that executors are not liable to each other, but each is liable to the *cestuis que trust*, and devisees, to the full extent of the funds received by him. *Lastly*, the removal of an executor from the State in which the will was proved, and in which letters testamentary were granted, does not discharge him from his liability as executor; much less does it release him from liability for assets received by him, and paid over to his co-executor. Here is an authority ad-

verse to the complainant upon every point which his bill presents. It shows that the authority of each executor is equal; that each and all of them are trustees for the persons interested in the estate they represent; and that neither can absolve himself from liability, by removing from the State and paying over the assets which he has received, to the other. If a voluntary payment would be unauthorised, will the law lend its aid to coerce it? This question, it seems to us, must be answered in the negative.

It is not pretended that the complainant is a creditor of the intestate, beyond what the property in his hands will pay. The case is nothing more than that of one of several executors calling upon his co-executor to pay over to him the assets in his hands, upon the allegation that the latter has ceased to be active in the settlement of the estate; and this, although his authority to act, and liability to the *cestuis que trust* still continues. In this view, it results from what has been said, that the bill cannot be supported, and was consequently properly dismissed. The decree of the court of chancery is affirmed with costs.